IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| GREGORY BATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:14-cv-906-TMP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

### I.   Introduction

The plaintiff, Gregory Bates, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Mr. Bates timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned magistrate judge. Based upon the court's review of

the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

Mr. Bates was 46 years old at the time of the Administrative Law Judge's ("ALJ") decision, and he was deemed to have a "marginal" education. (Tr. at 159). The ALJ further found that Mr. Bates has no past relevant work experience. (*Id.*) Mr. Bates performed some work, helping a woman with a produce stand for a few hours a week, and was paid about $50 per week, but the work was insufficient to be deemed gainful. (Tr. at 153). Mr. Bates claims that he became disabled on June 30, 2009, due to pain in his legs and feet, diabetes, obesity, high cholesterol, and an inability to read well. (Tr. at 290).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If his impairments do not meet or equal the severity of the listed impairments, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past

relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Bates has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (Tr. at 160). She first determined that Mr. Bates has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 153). According to the ALJ, plaintiff's obesity, hypertension, diabetes mellitus with neuropathy, degenerative joint disease ("DJD") of the right knee, and borderline intellectual functioning ("BIF") are considered "severe" based on the requirements set forth in 20 C.F.R. §§ 404.1520(c) and

416.920(c). (Tr. at 154). However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 155). The ALJ further found that Mr. Bates' dysthemia was mild, and he had no other symptoms severe enough to meet any listing for mental disorders in Section 12.00C. (Tr. at 154). The ALJ also ruled out listing 9.08, because the neuropathy in his legs and feet has not demonstrated "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, gait and station" and because he does not have "acidocis occurring at least on an average of once every two months or retinitis proliferans." (Tr. at 155). The ALJ further stated that the claimant's obesity was not so severe as to be found in any listing, and that his borderline intellectual functioning does not meet or equal listing 12.02 (organic mental disorder) or 12.05 (intellectual disability) because he shows no abnormalities associated with brain dysfunction, has an IQ in the mid-70s, and is able to take care of his personal needs, drive, shop, and prepare simple meals. (Tr. at 155).

The ALJ further determined that Mr. Bates has the following residual functional capacity: a range of light work, standing and/or walking two to four hours in an eight-hour work day, sitting the remainder of the day, with occasional

balancing, stooping, kneeling, crouching, and climbing ramps or stairs, but never climbing ropes, ladders, or scaffolds, and never crawling. She further found that Mr. Bates should avoid concentrated cold temperatures, extreme wetness and humidity, and unprotected heights. Finally, she found that Mr. Bates cannot do "prolonged reading for content and comprehension," or mathematical calculations. (Tr. at 155). The ALJ further found that the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they are inconsistent with the RFC. (Tr. at 156).

     The ALJ pointed out that the medical records do not show that Mr. Bates was seeking any treatment for his diabetes, obesity, or knee and leg pain at the time that he alleges his disability began in June 2009. He visited the ER about six months later for bronchitis. (Tr. at 354). In February 2011 he sought care for tooth pain after an extraction. (Tr. at 355-57). He visited a different ER in May of 2011, complaining of dizziness and ringing in the ears, which he said had begun a month and a half before his visit. (Tr. at 361). He did not complain of any severe pain, and did not report that he was diabetic. (Tr. at 361). Records from an Urgent Care of Russellville visit in October of 2011 were the first indication that Mr. Bates had diabetes and joint pain. (Tr.at 363). The ALJ noted that Mr. Bates received

medication for the diabetes, but was not prescribed any pain medication despite complaints of knee pain. (*Id*.) An ER visit in October 2011 further indicates that diabetes and hypertension were "newly diagnosed" two months before that visit. (Tr. at 370). The ALJ further considered the medical records indicating that Mr. Bates is morbidly obese and that he has an IQ in the mid 70s, placing him in the borderline range of intellectual ability. (Tr. at 157).

Moving to the fourth step of the analysis, the ALJ concluded that Mr. Bates has no past relevant work and was a younger individual on the alleged onset date. (Tr. at 159). The ALJ considered the testimony of a vocational expert, and determined that he was able to perform work as a tube operator, table worker, and egg processor, and that such jobs exist in a significant number in the state and national economies. (Tr. at 160). The ALJ concluded her findings by stating that Mr. Bates is not disabled as defined in the Social Security Act, Sections 216(i) and 223(d). (Tr. at 161).

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is

supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.  Discussion

Mr. Bates alleges that the ALJ's decision should be reversed and remanded because, he asserts, the ALJ's decision failed to properly evaluate the claimant as "illiterate," and failed to sufficiently determine the effects of obesity on his ability to work. (Doc. 10, pp. 14-23). Specifically, he argues that the ALJ failed to apply Grid Rule 201.17,[1] which provides that a younger individual age 45-49 who is illiterate and whose previous work experience is unskilled or none is deemed

---

[1]  In relevant part, Grid Rule 201.17, 20 C.F.R. § 201.00(h)(1), Part 404, Subpart P, Appendix 2, provides:

> Accordingly, a finding of "disabled" is warranted for individuals age 45-49 who:
>
>   (i) Are restricted to sedentary work,
>   (ii) Are unskilled or have no transferable skills,
>   (iii) Have no past relevant work or can no longer perform past relevant work, and
>   (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.

disabled. In addition, Mr. Bates argues that the ALJ's discussion of his obesity was insufficiently detailed to comply with SSR 02-1p. The court must be aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court's task is to determine whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record supporting the ALJ's conclusion, even if the court would have decided the matter differently.

### A. Illiteracy

The ALJ did not make any adjudication regarding whether Mr. Bates is illiterate. She did, however, find that the claimant's borderline intellectual functioning does not meet or equal listing 12.02 (organic mental disorder) because

he shows no abnormalities associated with brain dysfunction as required for a listing under 12.02. She further found that he did not meet listing 12.05 (intellectual disability) because has an IQ in the mid-70s and he is able to take care of his personal needs, drive, shop, and prepare simple meals. (Tr. at 155). The 12.05 criterion require an IQ of 59 or less, or an IQ of 60 to 70, along with additional difficulties and impairments. The claimant does not argue that his mental disability places him within those listings. Instead, he asserts that he is disabled under Grid Rule 201.17, which provides that a "younger individual" aged 45 to 49, who has an RFC for sedentary work, who is illiterate or unable to communicate in English, who has a work history of only unskilled work, is entitled to a decision in favor of disability.

The Commissioner counters that the plaintiff did not prove that he is illiterate, and that the ALJ's finding that Mr. Bates had a "marginal" education was proper. Such a finding places Mr. Bates outside the reach of Grid Rule 201.17. The Commissioner urges the application of Grid Rule 201.18, which instructs that a younger individual with a limited education who is "at least literate and able to communicate in English" is to be found "not disabled."[2] Thus, the question here is

---

[2] Both of these grid rules apply to individuals with an RFC that limits them to sedentary

whether the ALJ's determination that the claimant has a "marginal education," rather than being "illiterate," is supported by substantial evidence in the record.

The Commissioner's regulations define illiteracy as:

> Illiteracy means the inability to read or write.  We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 404.1564(b)(1).    A marginal level of education is also defined by the regulations:

> Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

20 C.F.R. § 404.1564(b)(2).

It has been explained in other cases within the Eleventh Circuit that the number of grades in school a claimant has completed does not provide a definitive

---

work.  The RFC set forth by the ALJ in this case provided for a range of light work, which would trigger Grid Rules 202.17 and 202.18, both of which call for a finding of "not disabled." However, the only jobs available to Mr. Bates, per the testimony of the VE, were sedentary jobs. (Tr. at 186-187).   There is no explanation in the ALJ's decision, or in the transcript of the hearing, as to why no "light work" jobs were available to Mr. Bates, whose exertional limitations, according to the ALJ, permitted him to perform light work.

answer to whether a claimant is illiterate under the regulations.  *See, e.g., Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996).  In fact, the regulations provide that the grade level completed "may not represent actual educational abilities."  20 C.F.R. § 416.964(b).  Where there is no substantial evidence to support a finding that the claimant has a marginal education, the case should be remanded for further findings of fact on the question of literacy.  *Wolfe*, 86 F.3d at 1077.  Because literacy is "a component of the education category under the grids," the Commissioner bears the burden of proof on the matter.  *Hood v. Astrue*, 2010 WL 1223885 * 5 (M.D. Fla., March 24, 2010), citing 20 C.F.R. § 405.1560(c)(2) and *Wolfe*, 86 F.3d 1072.

In this case, Mr. Bates claimed in his application that he "can't read well." (Tr. at 290).  When asked why he left his last job as a night watchman, he said he was fired because he could not fill out the required paperwork at the end of the shift, and that he had been able to work a few months because the other guard helped him fill out the paperwork.  At the hearing, the following transpired:

> Q:   And why couldn't you fill out the paperwork?
>
> A:   I can't read that good.  I just – I can't fill out application, I just don't know how to fill it out like some of the names but I can't fill out the rest of it.  Like if something happened or something like that I can't put it on paper.

> Q: Well have you tried to learn how to read?
>
> A: Yes, ma'am.  I've had tutors [inaudible] and I never could pick it up.  I'd get like the second grade and after that I couldn't pick it up.
>
> Q: Why not?
>
> A: Well when I look at a word, I look at it right in the middle of a word they say the one that test me.  Instead of right to left or left to right, I look at it right in the middle and I just can't explain it.  I just –
>
> Q: Well I know a lot of people who are dyslexic and they're able to work.  Have you tried to overcome your dyslexia?
>
> A: Well that's the reason I had tutors when I was growing up and I was in – I was in special education.

(Tr. at 174-75).[3]  He also testified that when he went to apply for jobs, someone else would fill out the applications for him.  (Tr. at 185).  Also, when asked how he knew how long to cook TV dinners in a microwave oven, he replied:

> A: I don't, I just put it in there for three or four minutes, take it out.
>
> Q: How do you know how to program the microwave?

---

[3] There is no evidence in the record that any teacher, counselor, physician, or psychologist ever described Mr. Bates's inability to read as being due to dyslexia.  The ALJ appears to have speculated about this learning disability based on his one-sentence explanation at the hearing.  That speculation is not supported by substantial evidence, however.

> A: It's just, it's got to cook on there and I just put like five minutes or four minutes, just punch a four in.

(Tr. at 177).

When the vocational expert began to testify, she described Mr. Bates as having an "eighth-grade education." (Tr. at 185). The ALJ's hypothetical questions that followed assumed a man with "the claimant's education" and added the restriction that there be no "prolonged reading for content or comprehension or any advanced mathematical calculations." (Tr. at 187). Neither the ALJ nor the claimant's attorney asked any questions regarding illiteracy or that Mr. Bates had difficulty reading at a much lower level than grade eight.[4]

In his disability report form, Mr. Bates reported that he could speak and understand English, but that he could not read and understand written English, and could not write more than his name in English. (Tr. at 289). He further indicated that he finished the eighth grade but had attended special education classes. (Tr. at 291). The forms he submitted were filled out by his cousin, Theresa Orrick. (Tr. at 309, 326). When asked about her at the hearing, he said he had "no idea" how to

---

[4] While it was adduced that Mr. Bates has a driver's license, there were no questions asked regarding whether he passed the written test or was given an oral exam to obtain the license.

spell her name.  (Tr. at 172).  The only school records contained in the underlying record are: (1) a report from the eighth grade which appears to indicate that Mr. Bates had all Ds and Fs on his report card, and that he withdrew before the end of the year, (2) a report from a Texas school in which he received all Ds and Fs in 1981; and (3) a report from the seventh grade, in which he made all Ds and Fs except in physical education.  (Tr. at 340-43).

The court finds that the record here is insufficient to support a finding that Mr. Bates had a marginal education.  There is no substantial evidence that Mr. Bates is able to read or write, and, indeed, that is extensive evidence to the effect that he cannot read or write.  Additionally, as mentioned above, although the ALJ found that Mr. Bates's RFC put him in the light work category, the VE opined only that Mr. Bates could perform *sedentary* work.  The VE explicitly testified that, with the reading limitation found by the ALJ, jobs were available to Mr. Bates only in the sedentary level.  (Tr. at 186-187).  If it is true that Mr. Bates can perform only sedentary jobs and he is "illiterate," it would appear that Grid Rule 201.17 would dictate a finding of disability.  Therefore the ALJ's decision is due to be reversed and remanded for an examination of Mr. Bates's education level and a determination of whether he is "illiterate" within the meaning of Grid Rule 201.17.

### B. Obesity

Plaintiff also asserts that the ALJ erred in failing to properly consider the effect of his obesity on his ability to work. (Doc. 10, pp. 19-23). However, the ALJ did state that she considered the effects of Mr. Bates's obesity in formulating his RFC, and that she did apply Social Security Ruling 02-01p. (Tr. at 157). Although the plaintiff described dizziness, shortness of breath, pain in his legs, and numbness, the ALJ noted that the medical records contained only limited medical treatment for these complaints, and that his allegations regarding the limitations caused by these conditions was not fully credible. While the record contains several instances of medical professionals counseling Mr. Bates about the need to loose weight, none found any impairment was related to his obesity or imposed any restrictions upon him due to the obesity. Even the most favorable medical evidence for the claimant, Dr. Long's letter of August 31, 2012, fails to mention obesity as an impairment or contributing medical condition. Accordingly, the ALJ's decision regarding the effects of obesity was supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that plaintiff's obesity, while severe, did not cause disabling limitations.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Bates's arguments, the Commissioner's decision hereby is due to AFFIRMED as to the consideration of the effects of obesity, but VACATED and REMANDED for a new hearing and findings of fact with respect to whether the claimant is illiterate and limited to sedentary jobs (and, thus, disabled) within the meaning of Grid Rule 201.17, 20 C.F.R. 201.00(h)(1), Part 404, Subpart P, Appendix 2.

DATED the 27th   day of May, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE